UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OMAR MMUBANGO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 04 C 4107 |
| | ) |
| MICHAEL LEAVITT, Administrator, | ) Judge Ruben Castillo |
| United States Environmental Protection | ) |
| Agency, Region 5, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Omar Mmubango, a black male born in Kenya, sued Michael Levitt, Administrator of the U.S. Environmental Protection Agency ("EPA") for race discrimination, national origin discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* The EPA filed a motion for summary judgement. (R. 44-1.) For the reasons below, the Court grants the motion for summary judgment in its entirety.

### RELEVANT FACTS[1]

### I. The Job Posting

The EPA posted a job vacancy announcement for a chemist in its Chicago office. (R. 60, Pl.'s Facts ¶ 1.) The U.S. Office of Personnel Management ("OPM") assisted the EPA with obtaining qualified applicants. (R. 59, Pl.'s Resp. to Def.'s Facts ¶ 18.) OPM performed an analysis of the requirements for the chemist position, developed and published the vacancy announcement, collected the applications, prepared and issued a list of qualified applicants

---

[1] These facts are derived from the parties' statements of facts filed pursuant to Local Rule 56.1(b). Unless otherwise indicated, the facts included herein are undisputed.

("Certificate of Eligibles"), and ranked the applicants. (*Id.*) Among the requirements for the position are a degree in the physical sciences that includes 30 semester hours in chemistry; one year of specialized experience; and the ability to communicate effectively, both orally and in writing. (R. 67, Pl.'s Resp. to Def.'s Facts ¶ 20.) The vacancy announcement stated that an applicant could submit "a resume, Optional Application for Federal Employment (OF-612), or other written application format of [applicant's] choice." (R. 60, Pl.'s Facts ¶ 6.) The application deadline was April 9, 1997. (*Id.* ¶ 4.)

Mmubango saw the job posting for the chemist position on the Internet shortly before the application deadline. (*Id.* ¶ 2.) Mmubango did not review his resume for accuracy prior to submitting it. His resume had typographical errors, grammatical errors and omitted salary information. (R. 59, Pl.'s Resp. to Def.'s Facts ¶ 4, 56; R. 65, Pl.'s Exs., Ex. K, Mmubango's Resume.) Mmubango failed to list the names of several of the companies for which he had worked on his resume, describing only the type of work that he did, and he omitted the names of several of his previous supervisors. (R. 65, Pl.'s Exs., Ex. K, Mmubango's Resume.) Mmubango also had not been steadily employed for a number of years prior to applying for the chemist position. (R. 59, Pl.'s Resp. to Def.'s Facts ¶ 38.) After Mmubango submitted his application, the EPA sent Mmubango a letter informing him that he was placed on an eligible hiring list and would be contacted for an interview. (R. 59, Pl.'s Resp. to Def.'s Facts ¶ 6.)

## II. The Interviews

EPA Section Chief George Hamper conducted the interviews for the chemist position. (R. 59, Pl.'s Resp. to Def.'s Facts ¶ 7.) At the time of the interviews, Hamper's department contained thirteen employees, two of whom were black. (R. 67, Def.'s Resp. to Pl.'s Facts ¶ 71.)

2

Hamper provided OPM with the criteria used to evaluate the candidates. (R. 65, Pl.'s Exs., Ex. K, Hamper Dep. at 20.) In April 1997, OPM sent Hamper the Certificate of Eligibles from which he selected the top three candidates. (R. 59, Pl.'s Resp. to Def.'s Facts ¶ 21-22.) Hamper reviewed the written applications of each candidate. (R. 46, Def.'s Facts ¶ 25.) The top three candidates were Mmubango, Dr. John E. Parks (white male born in USA), and Thomas Schuster (white male born in the USA). (*Id.* ¶ 23.) After assessing the knowledge, skills and abilities of each candidate, the OPM provided each with a numerical score. (R. 67, Def.'s Resp. to Pl.'s Facts ¶¶ 15-16.) Mmubango was given the highest score, 96, and the two remaining candidates each received a score of 87. (*Id.* ¶ 17.) At the time of the interview, Mmubango did not have a degree in chemistry. (*Id.* ¶ 41.) He received his degree in June 1997. (*Id.*)

Hamper interviewed Parks and Schuster on May 1, 1997, and Mmubango on May 9, 1997. (*Id.* ¶ 33, 35.) During Mmubango's interview, Hamper concluded that English was Mmubango's second language because he spoke with an accent. (*Id.* ¶ 38.) In the interview, Hamper asked Mmubango where Mmubango was from, and Mmubango stated that he was from Kenya. (*Id.* ¶ 39.) While discussing Mmubango's work history, Mmubango told Hamper that he had been laid off from his previous job at the Schmidt Brewing Company because the division he was working for shut down. (R. 59, Pl.'s Resp. to Def.'s Facts ¶ 37.) Mmubango also worked for the Minnesota Pollution Control Agency ("MPCA"), and during the interview, Mmubango stated that he left the MPCA because he "was not satisfied to become a state government employee" who was "always placed on six months probation." (R. 59, Pl.'s Resp. to Def.'s Facts ¶ 37.) During the interview, Hamper did not criticize Mmubango about his communication skills, stating that he "understood [Mmubango's] point, and [Mmubango] communicated much

better orally than he did in writing." (*Id.* ¶ 55.) After the interview, Hamper made a note of the spelling errors on Mmubango's resume, but he did not mention them during the interview. (*Id.* ¶ 40.)

## III. Contacting Employment References and Making the Final Selection

After the interview, Hamper contacted individuals listed as references on Parks and Schuster's applications. (R. 59, Pl.'s Resp. to Def.'s Facts ¶¶ 46, 47.) For Mmubango, however, Hamper contacted Robert Dullinger, Mmubango's former supervisor at the Minnesota Pollution Control Agency ("MPCA"). (*Id.* ¶ 48.) Dullinger was not listed on Mmubango's application as a reference, but Mmubango mentioned him during the interview. (*Id.* ¶ 48.) During Hamper's telephone conversation with Dullinger, Dullinger informed Hamper that he decided not to extend Mmubango's employment beyond the six month probationary period and could not provide any further information because of two lawsuits (one still pending) that had been filed in connection with Mmubango's employment. (*Id.* ¶ 49.) Hamper did not know with certainty what the lawsuit involved nor did he know why Dullinger did not retain Mmubango beyond the six month probationary period. (*Id.* ¶¶ 50-51.) Dullinger did tell Hamper, however, that Mmubango had filed two lawsuits over Dullinger's decision not to certify him for employment beyond the MPCA's six month probationary period for new employees. (*Id.* ¶ 57.)

After speaking with Dullinger, Hamper decided to hire Parks instead of Mmubango. (*Id.* ¶ 52.) Hamper then prepared a memo ("the May 16, 1997 memo") setting forth his reasons for not selecting Mmubango since Mmubango was the top ranked candidate and the EPA had an affirmative action policy that would have favored hiring Mmubango. (*Id.* ¶ 54.) Hamper also prepared the memo because he knew that Mmubango had litigation pending against a former

4

employer. (*Id.*)

Hamper stated in the memo that he did not select Mmubango for the chemist position because Mmubango had "difficulty communicating clearly, both in writing and in oral conversation." (*Id.*) Hamper also expressed his concerns that Mmubango had not stated clearly his reason for leaving the MPCA. (*Id.*) After the interview, Mmubango was never notified that the chemist position had been filled or of his non-selection. (*Id.* ¶ 62.)

Hamper offered the chemist position to John Parks, who accepted the job. (*Id.* ¶ 59.) Parks's employment was terminated less than two months later for a conduct issue. (*Id.* ¶¶ 59-60.) After Parks's termination, Hamper selected Vergel Santos for the chemist position, and Santos was ranked seventh on the Certificate of Eligibles. (*Id.* ¶ 63.) Mmubango filed a formal complaint of discrimination against the EPA with the Equal Employment Opportunity Commission ("EEOC") in April 1998. (R. 59, Pl.'s Resp. to Def.'s Facts ¶ 71.)

## LEGAL STANDARDS

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must "construe all facts in the light most favorable to the nonmoving party and draw all reasonable and justifiable inferences in favor of that party." *King v. Preferred Tech. Group*, 166 F.3d 887, 890 (7th Cir. 1999). Weighing evidence and making credibility decisions

are jury functions, and it is not appropriate for a judge to assume those functions when deciding a summary judgment motion. *Anderson,* 477 U.S. at 255. Accordingly, we apply the summary judgment standard with special scrutiny to employment discrimination cases, where issues of intent and credibility often are paramount. *Krchnavy v. Limagrain Genetics Corp.*, 294 F.3d 871, 875 (7th Cir. 2002).

## ANALYSIS

Mmubango brought three separate claims under Title VII—discrimination on the basis of race and national origin and retaliation. Title VII of the Civil Rights Act of 1964 prohibits employers from treating employees differently on the basis of race or national origin, 42 U.S.C. § 2000e-2(a)(1), and from retaliating against an employee if the employee opposes any practice deemed unlawful under the Act, 42 U.S.C. § 2000e-3(a). Mmubango can avert summary judgment in favor of the EPA either by producing enough evidence of discriminatory intent to create a triable issue of fact, or by establishing a prima facie case under the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), formula. *Rudin v. Lincoln Land Cmty. College,* 420 F.3d 712, 724 (7th Cir. 2005). If Mmubango establishes a prima facie case of race discrimination, national origin discrimination, or retaliation, the burden shifts, requiring the EPA to come up with a noninvidious reason for the adverse action. *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 647 (7th Cir. 2005). If the EPA cannot satisfy its burden, the Court will deny summary judgment. *Id.* at 647.

### I. Discrimination on the Basis of National Origin and Race

Mmubango proceeds under the indirect method of proof to establish his claims of intentional discrimination on the basis of national origin and race. In the failure to hire context, a

6

plaintiff can establish a prima facie case of national origin or race discrimination through indirect evidence by demonstrating that: (1) he was a member of a protected class; (2) he was qualified for an open position for which he applied; (3) his application for employment was rejected; and (4) defendants filled the position with someone not of Mmubango's protected class, or left the position open. *Blise v. Antaramian*, 409 F.3d 861, 866 (7th Cir. 2005). Throughout the burden shifting process, the ultimate burden of persuasion remains at all times with Mmubango. *Rudin*, 420 F.3d at 724. Mmubango has made out a prima facie case. Mmubango is a member of a protected class— he is Black and of Kenyan national origin; he was qualified for the position, as evidenced by the fact that he received the highest score from OPM out of all of the applicants; he was not chosen for the position; and the position was filled by someone who was not a member of Mmubango's protected class.

Since Mmubango has established a prima facie case, the burden now shifts to the EPA to "articulate a legitimate, nondiscriminatory reason" for its decision not to hire Mmubango. *Id.* at 867. If the EPA cannot articulate such a reason or if Mmubango can show that the EPA's reason was pretextual, then this Court must deny summary judgment. *Blise*, 409 F.3d at 867. "A plaintiff shows that a reason is pretextual 'directly by persuading the court that a discriminatory reason more likely motivated the [defendants] or indirectly by showing that the [defendants] proffered explanation is unworthy of credence.'" *Id.* (citing *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). The Seventh Circuit has held that an employer's decision to hire "is pretextual when it is a lie—a phony reason meant to cover up a disallowed reason." *Id.*

The EPA has articulated a legitimate, nondiscriminatory reason for its decision not to hire Mmubango. Among the basic requirements for the chemist position are "the ability to

7

communicate effectively, both orally and in writing." (R. 67, Def.'s Resp. to Pl.'s Facts ¶ 20.) Hamper claims that he did not hire Mmubango because he "concluded that [Mmubango] has difficulty communicating clearly, both in writing and in oral conversation." (*Id.* ¶ 55.) In coming to this conclusion, Hamper specifically relied on the spelling and grammatical errors in Mmubango's resume. Hamper also was concerned that Mmubango had not clearly stated his reason for leaving his previous job at the MPCA. (*Id.* ¶ 55.)

Mmubango argues that the EPA's justification for not hiring him is pretext for several reasons: 1) he was the first ranked candidate on the Certificate of Eligibles; 2) Hamper inappropriately relied on the fact that Mmubango has an accent as evidence of his poor speaking skills in order to disqualify Mmubango for the position; 3) the position did not place heavy emphasis on written communication ability; 4) Hamper selected a candidate for the position whose application was irreparably flawed; and 5) there were only a few black employees in Hamper's section at the time of Mmubango's non-selection.

Mmubango argues that the defendant's attempt to brush aside his status as the first ranked candidate on the Certificate of Eligibles is indicative of pretext. However, "Title VII . . . does not require that the candidate whom a court considers most qualified for a particular position be awarded that position; it requires only that the decision among candidates not be discriminatory." *Mason v. Continental Illinois Nat'l Bank*, 704 F.2d 361, 366 (7th Cir 1983). The Seventh Circuit further has held that courts "'do not sit as a super-personnel department' where disappointed applicants or employees can have the merits of an employer's decision replayed to determine best business practices." *Blise*, 409 F.3d at 867. Accordingly, Hamper was entitled to act on his belief that John Parks was more qualified than Mmubango, so long as this belief was genuine.

8

*Id.* At the time of the interview, John Parks had a PhD in chemistry whereas Mmubango had yet to obtain his bachelor's degree in chemistry. Also, Parks's resume was easier to read and less prone to errors than Mmubango's resume. Hamper could have genuinely believed, based on these factors, that Parks was the better candidate, despite Mmubango's first ranked placement on the Certificate of Eligibles.

Mmubango next alleges that Hamper inappropriately relied on his accent as evidence of his poor speaking skills in order to disqualify him for the position. The evaluation of a person's speaking skills is inherently subjective. *Surti v. G.D. Searle & Co.*, 935 F. Supp. 980, 987 (N.D. Ill. 1996). However, "[a] foreign accent that does not interfere with a Title VII claimant's ability to perform duties of the position he has been denied is not a legitimate justification for adverse employment decisions." *Id.* at 987 (citing *Carino v. Univ. of Okla. Bd. of Regents*, 750 F.2d 815, 819 (10th Cir. 1984)); *see also Hasham v. California State Bd. of Equalization*, 200 F.3d 1035 (7th Cir. 2000) (finding that a reasonable jury could have concluded that a supervisor's contradictory testimony about why he did not promote the plaintiff, in conjunction with his comments about the plaintiff's accent and about hiring foreigners generally, demonstrated discriminatory animus).

Hamper testified in his deposition that he did not have any problems with Mmubango's oral communication skills, that he "understood [Mmubango's] point and [Mmubango] communicated much better orally than he did in writing." (R. 65, Pl.'s Exs., Ex. K, Hamper Dep. at 124-25.) However, in the May 16, 1997 memo, Hamper stated that he "decided not to select Mr. Mmubango [sic] because I concluded that he has difficulty communicating clearly, both in writing and in oral conversation." (*Id.*, May 16, 1997 memo.) Mmubango argues that this is

9

evidence of pretext since Hamper claims that he had no problems understanding Mmubango, but he lists Mmubango's communication skills as a factor behind his decision not to hire Mmubango. Hamper, however, notes several other reasons in the May 16, 1997 memo for his decision not to hire Mmubango including Mmubango's resume, which Hamper found to be "incomplete, unclear, and poorly written in general;" conflicting stories about Mmubango's reason for leaving the MPCA; and Mmubango's writing skills. (*Id.*)

While Mmubango's oral communication skills may have been sufficient, Mmubango has offered no compelling evidence to rebut the other reasons stated in the May 16, 1997 memo as to why he was not selected for the position. *Hudson v. Chi. Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004) (noting that "[w]here a defendant has proffered more than one reason for the challenged action, a plaintiff must address all of the employer's suggested reasons"). For example, Mmubango does not dispute that his resume had typographical and grammatical errors. Mmubango also does not deny that he told Hamper during their interview that he left the MPCA because he "was not satisfied to become a state government employee," but he omitted the fact that Dullinger, his boss at the MPCA, decided not to retain Mmubango beyond the six-month probationary period. This fact could have genuinely led Hamper to believe that Mmubango was not forthcoming about his experience at the MPCA, and that this lack of candor—combined with Mmubango's poor writing skills—made Mmubango a less than ideal candidate. *Blise*, 409 F.3d at 867 (stating that "an employer's decision to favor one candidate over another can be "mistaken, ill-considered or foolish, [but] so long as [the employer] honestly believed those reasons, pretext has not been shown.").

The fact that Hamper commented on Mmubango's accent during the interview and asked

Mmubango where he was from, despite the fact that this information was listed on his resume does not demonstrate discriminatory intent. Hamper could have been making small talk or leading to a follow-up question by inquiring about Mmubango's origins. *See Blise*, 409 F.3d at 868 (noting that "[a] job interview will often involve 'fleshing out' an applicant's resume"). Such speculation about Hamper's motives is insufficient to defeat a motion for summary judgment. *O'Neal v. City of Chicago*, 392 F.3d 909, 912 (7th Cir. 2004). Thus, Mmubango's argument that Hamper inappropriately relied on his accent and communication skills to exclude him from the position does little to rebut Hamper's legitimate, nondiscriminatory reasons for deciding not to hire Mmubango.

Mmubango also argues that Hamper inappropriately relied on his writing ability when the position did not place heavy emphasis on writing skills. Among the qualifications listed on the vacancy announcement are the "ability to communicate effectively, both orally and in writing." (R. 67, Def.'s Resp. to Pl.'s Facts ¶ 20.) If Hamper decided that Mmubango's writing skills were not up to par, especially when it is listed as a prerequisite for the job, it is not for this Court to second-guess his decision. *Heerdink v. Amoco Oil Co.*, 919 F.2d 1256, 1260 (7th Cir. 1990) (stating that "[r]eview of job applications necessarily involves relative comparisons of objective and subjective qualifications, but such review is the domain of employers and not the courts.").

Mmubango argues that Hamper selected Parks for the position, but Hamper applied a less stringent standard in evaluating Parks's application than he did in evaluating Mmubango's application. To support this argument, Mmubango states that several pages of Parks's application indicate that it was prepared several years prior to Parks's interview with Hamper; that Parks had been unemployed for one and half years prior to applying for the Chemist

position; and finally, that Parks's application was received almost two weeks after the application deadline. None of this evidence, however, allows us to conclude that Hamper's selection of Parks is pretext. "It is not appropriate for the courts to fetter management's discretion by substituting their own judgment as to proper hiring practices." *Id.* at 1261. Therefore, even if Hamper judged Parks by a more forgiving standard than that by which he judged Mmubango, as long as Hamper reasonably believed that Parks was the better candidate, Hamper is entitled to act on this belief. *Blise*, 409 F.3d at 867. There is a wealth of evidence in the record—Parks's resume, his PhD in chemistry, his publications—that suggests that Hamper could have reasonably believed Parks was the better candidate. *See Parker v. Bd. of School Comm'rs*, 729 F.2d 524, 527 (7th Cir. 1984) (stating that "[a] desire to hire the more experienced or better qualified applicant is a non-discriminatory, legitimate, and common reason on which to base a hiring decision.") (internal citation omitted).

Mmubango suggests that Parks may not have prepared his own application, but Mmubango does not provide any evidence to support this allegation. Allegations unsupported by admissible evidence are insufficient to withstand a summary judgment motion. *Malec v. Sanford*, 191 F.R.D. 581, 584-85 (N.D. Ill. 2000).

Finally, Mmubango argues that the small amount of black employees in Hamper's section at the time of his non-selection for the chemist position provides evidence of pretext. There were only thirteen employees in Hamper's department, two of whom were black. A sample this small is not statistically significant nor would it permit an inference of discrimination or pretext. *See Diettrich v. Northwest Airlines, Inc.*, 168 F.3d 961, 966 (7th Cir. 1999); *Parker v. Federal Nat'l Mortg. Asso.*, 741 F.2d 975, 980 (7th Cir. 1984). Accordingly, Mmubango cannot demonstrate

that the EPA's articulated reasons for failing to hire him were pretext.

## II. Retaliation

Mmubango alleges that Hamper retaliated against him for filing an employment discrimination complaint against his former employer by not hiring him for the chemist position. Mmubango can establish a prima facie case of retaliation by proving that: 1) he engaged in a statutorily protected activity; 2) he applied and was qualified for the position; 3) he was not hired for the position; and 4) a similarly situated individual who did not complain was hired for the position. *Cichon v. Exelon Generation Co., LLC*, 401 F.3d 803, 812 (7th Cir. 2005). Mmubango has made out a prima facie case of retaliation: he filed an employment discrimination lawsuit against his former employer; he applied and was qualified for the Chemist position; he was not hired for the position; and Parks, the successful candidate, had not engaged in any statutorily-protected behavior. Defendant asserts that Mmubango has not made out a prima facie case because he has no knowledge of whether Parks ever engaged in protected activity. However, the defendant has acknowledged that Hamper was not aware of any protected activity on the part of Parks at the time of the interview. (R. 67, Def.'s Resp. to Pl.'s Facts ¶ 68.) It is axiomatic that an employer must know whether the similarly situated employee it hired for the position engaged in statutorily protected behavior for purposes of treating that individual "more favorably" than the plaintiff. Therefore, the EPA cannot defeat a prima facie case by simply stating that Parks might have engaged in protected behavior at some point in the past if such behavior was unbeknownst to Hamper at the time he made his hiring decision.

Since Mmubango has established a prima facie case of retaliation, the EPA must come forward with a legitimate, nondiscriminatory reason for its action, and if it does so, Mmubango

13

then must demonstrate that this reason was pretext for discrimination. *Blise*, 409 F.3d at 867. As we indicated above, the EPA has articulated a legitimate, nondiscriminatory reason for its decision not to hire Mmubango. Mmubango argues that these reasons are pretext because Hamper contacted Dullinger and Hamper learned that Mmubango's lawsuits possibly involved a discrimination issue. Mmubango does not, however, assert that Hamper knew the details or basis of the lawsuit involved and his speculation regarding Hamper's knowledge does not create an issue of triable fact. *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004) (stating that "[i]nferences that are supported by only speculation or conjecture will not defeat a summary judgment motion") (internal citations omitted). The fact that Hamper knew Mmubango was suing a former employer does not rebut the EPA's legitimate, nondiscriminatory reasons for not hiring Mmubango. Mmubango has not shown that Hamper was motivated not to hire Mmubango as a result of the sparse information Dullinger provided regarding Mmubango's lawsuit against the MPCA. *Rudin*, 420 F.3d at 725 (holding that "[a]t this stage, the employer is not required to 'prove that it was actually motivated by the proffered reason. Rather, an employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus.'"). Accordingly, Mmubango has not shown that the EPA's articulated reasons for not hiring him were pretext for retaliation and his prima facie case fails.

## CONCLUSION

Even after drawing all inferences in favor of Mmubango, the record does not allow us to conclude that he has established that there is a genuine issue of material fact requiring resolution at a trial. He has not established a prima facie case of discrimination on the basis of race and national origin or of retaliation under Title VII. For these reasons, we grant the EPA's motion for summary judgment in its entirety. (R. 44-1.) Because we are granting summary judgment, this Court need not decide the issue of compensatory damages that both parties raise in their briefs. The Clerk is directed to enter judgment for the defendant.

ENTERED:

Judge Ruben Castillo
United States District Court

**Dated:** April 21, 2006